Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ 85024

Telephone: (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff John Van Hoey*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| John Van Hoey,<br><br>          Plaintiff,<br><br>     v.<br><br>Life Insurance Company of North America, Kellogg Company, Kellogg Company Welfare Benefit Plan,<br><br>          Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff John Van Hoey (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

*Jurisdiction*

1.      Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Navajo County, Arizona.

3. Upon information and belief, Defendant Kellogg Company (hereinafter referred to as the "Company") sponsored, subscribed to and administered an Employee Welfare Benefit Plan within the meaning of 29 U.S.C. §1002(I) which was self insured and benefits were paid during the regular pay cycle. Upon information and belief, the name of the entity is the Kellogg Company Welfare Benefit Plan (hereinafter referred to as the "STD Plan") which was created to provide the Company's employees with welfare benefits.

Upon information and belief, the STD Plan states the STD benefits are paid through the regular pay cycle, initially at 100% of the employee's pay but then after a period of time the benefit amount becomes a percentage of the employee's salary.

4. Upon information and belief, the Company or STD Plan may have delegated responsibility for the STD Plan and/or claim administration to Life Insurance Company of North America (hereinafter referred to as "LINA"). Plaintiff believes that as it relates to his claim, LINA functioned as the Plan and/or Claim Administrator; however, pursuant to the relevant ERISA regulation, the Company and/or STD Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in LINA.

5. Upon information and belief, the Company or STD Plan may have also operated under a structural conflict of interest in that they may have operated in dual roles as

the claims administrator and payor of benefits; *to wit*, if one of the aforementioned entities approved Plaintiff's claim it was also liable for payment of benefits.[1]

The Company or STD Plan's conflict of interest may have also led it to retain a company such as LINA to be the claims administrator in that the Company or STD Plan funded the aforementioned STD benefits and would directly benefit financially if LINA administered the STD Plan's claims in a parsimonious manner. LINA's conflict of interest exists in that if it maintained a parsimonious approach to managing the STD Plan's claims it would benefit by being viewed favorably by the Company or STD Plan who would save money by incurring a lower claims experience with fewer monetary contributions required to fund any STD Plan benefits.

6. Upon information and belief, LINA operated under a conflict of interest in that it also fully insured and was the decision maker of its own Long Term Disability group policy (hereinafter "LTD Policy") issued to the Company. As it relates to the LINA LTD Policy, Plaintiff believes LINA functioned as the claims administrator, meaning it decided who was eligible for and entitled to benefits.

7. In its role of insuring and administering the LTD Policy, LINA operated under a structural conflict of interest as it was the decision maker and payor of benefits. LINA also labored under a conflict of interest in Plaintiff's STD claim since it was the decision maker in that claim and if it found Plaintiff was disabled throughout the STD time

---

[1] In *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 868 (9th Cir. 2008) the court held, "In Bruch, the Supreme Court instructed us to "weigh[ ]" a fiduciary's "conflict of interest" as "a 'facto[r] in determining whether there is an abuse of discretion.' " 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)). *MetLife labors under such a conflict of interest: It both decides who gets benefits and pays for them, so it has a direct financial incentive to deny claims.* See Langbein, supra, at 1321 ("The danger pervades the ERISA-plan world that a self-interested plan decision maker will take advantage of its license under Bruch to line its own pockets by denying meritorious claims.")(emphasis added).

period, Plaintiff would then have been eligible for benefits pursuant to the LINA LTD Policy.[2]

Specifically, LINA's conflict existed in that if it determined Plaintiff was disabled for the entire short term disability timeframe, Plaintiff was then eligible to file a long term disability claim pursuant to LINA's LTD Policy. If LINA determined Plaintiff was also disabled pursuant to its LTD Policy, it would have then potentially incurred significant liability and may have been required to pay Plaintiff LTD benefits for an extended period of time.

In denying Plaintiff's STD claim, LINA's conflict manifested in that its decision precluded Plaintiff from being eligible for long term disability benefits pursuant to LINA's LTD Policy and this saved LINA money.

8. The Company, STD Plan and LINA conduct business within Navajo County and all events giving rise to this Complaint occurred within Navajo County.

*Venue*

9. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

10. Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant LINA Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy

---

[2] "A plan administrator's dual role of both evaluating and paying benefits claims creates the kind of conflict of interest referred to in Firestone. *That conclusion is clear where it is the employer itself that both funds the plan and evaluates the claim*, but a conflict also exists where, as here, the plan administrator is an insurance company. For one thing, the employer's own conflict may extend to its selection of an insurance company to administer its plan." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (U.S. 2008) (emphasis added).

-4-

pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits he may be entitled to as a result of being found disabled.

11. After working for the Company as a loyal employee, Plaintiff became disabled on or about February 25, 2011 due to serious medical conditions and was unable to work in his designated occupation as a Territory Manager. Plaintiff has remained disabled as that term is defined in the relevant Plan continuously since that date and has not been able to return to any occupation as a result of his serious medical conditions.

12. Following his disability, Plaintiff applied for short term disability benefits under the relevant Plan. The relevant STD Plan provides the following definition of disability:

> You are considered Disabled if, solely because of a covered non-occupational Injury or Sickness, you are either:
> 1.   unable to perform all the material duties of your Regular Occupation or a Qualified Alternative; or
> 2.   unable to earn 80% or more of his or her Indexed Covered Earnings.

13. In a letter dated April 14, 2011, LINA notified Plaintiff it was denying his claim for short term disability benefits.

14. Pursuant to 29 U.S.C. § 1133, Plaintiff timely appealed the April 14, 2011 denial of his claim for short term disability benefits in a letter dated October 3, 2011.

15. In support of his claim for short term disability benefits, Plaintiff submitted to LINA additional medical records, vocational and a lay witness evidence supporting his allegation he met the relevant definition of disability under the short term disability Plan.

16. In support of his appeal, Plaintiff submitted to LINA a narrative letter from a treating physician dated February 18, 2011 who concluded, "that due to [Plaintiff's] chronic permanent medical conditions, he will no longer be able to continue in his current position..." Plaintiff also submitted an April 14, 2011 narrative letter from the same

physician who opined that it is his "medical opinion…the stress inherent in [Plaintiff's] job prevents him from properly managing his condition and as such, he is no longer able to continue working in his current position."

17. Plaintiff also submitted a July 29, 2011 Functional Capacity Evaluation Report from a qualified physical therapist who determined after several hours of evaluation that Plaintiff " is unable to perform any categorical work at this time, even <u>sedentary</u>. [Plaintiff's] tests indicate inability to perform tasks, even at the <u>sedentary work level</u> due to his restrictions and limitations" (original emphasis).

18. Plaintiff also submitted an Independent Medical Examination dated November 14, 2011 performed by a qualified board certified physician who concluded after examination and review of the relevant medical records, "[b]ased on [Plaintiff's] history, medical records, the functional capacity evaluation and my evaluation, [Plaintiff] is incapable of any sustained gainful employment."  Plaintiff also submitted a November 14, 2011 addendum letter authored by the same physician who concluded, "[b]ased on [Plaintiff's] history, medical records, the functional capacity evaluation and my evaluation, patient is incapable of any sustained gainful employment."

19. In addition to the aforementioned evidence, Plaintiff submitted a vocational report from a qualified vocational expert and a sworn affidavit from a previous co-worker, each individual confirmed Plaintiff is unable to work in any occupation.

20. As part of its review of Plaintiff's claim for short term disability benefits, LINA obtained a medical records only "paper review" from several of its own employees, an Appeal Claim Manager and Nurse Case Manager.  Because LINA had its own employees review his claim, Plaintiff believes the Appeal Claim Manager and Nurse Case Manager labored under a conflict of interest in that they had an incentive to protect their employment with LINA by providing paper reviews which selectively review or ignored

evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which were favorable to the Plan/Company as well as LINA and supported the denial of his claim.

21. In a letter dated December 13, 2011, LINA notified Plaintiff it was upholding the denial of his claim for short term disability benefits. In the letter, LINA notified Plaintiff that he could file a civil action lawsuit in federal court pursuant to ERISA.

22. LINA failed to adequately investigate Plaintiff's STD claim and failed to engage Plaintiff and/or his treating physicians in a dialogue during the appeal of his claim with regard to what evidence was necessary so Plaintiff could perfect his appeal and claim. LINA's failure to investigate the claim and to engage him in this dialogue or to inform Plaintiff of the evidence it believed was important to perfect his claim is a violation of ERISA and Ninth Circuit case law and a reason he did not receive a full and fair review.

23. Upon information and belief, LINA denied Plaintiff a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to, failing to consider all the evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability, disregarding Plaintiff's self-reported symptoms, failing to consider all the diagnoses and/or limitations set forth in his medical evidence as well as the combination of those diagnoses and impairments, failing to obtain an Independent Medical Examination when the Plan allowed for one, failing to engage Plaintiff in a dialogue so he could submit the necessary evidence to perfect his claim and failing to consider the impact the side effects from Plaintiff's medications would have on his ability to engage in any occupation.

24. In evaluating Plaintiff's claim on appeal, LINA had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in his best interests and other participants" which it failed to do. [3]

25. Plaintiff believes one reason LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its aforementioned conflicts of interest. Plaintiff believes LINA's conflict of interest is evident in the fact that if it found he met the definition of short term disability in the self insured STD Plan and Plaintiff exhausted those benefits, LINA would then be confronted with potentially incurring significant liability in Plaintiff's long term disability claim since it fully insured that policy. Due to this conflict of interest, when LINA denied Plaintiff's short term disability claim, it precluded Plaintiff from being able to file a long term disability claim under the LINA Policy and in the process saved a significant sum of money.

26. Plaintiff is entitled to discovery regarding LINA's aforementioned conflicts of interest and any individual who reviewed his claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced LINA's decision to deny his claim.

27. With regard to whether Plaintiff meets the definition of disability set forth in the Plan, the Court should review the evidence in Plaintiff's claim *de novo,* because even if

---

[3] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

the Court concludes the Plan confers discretion to LINA, its unlawful violations of ERISA committed during the review of Plaintiff's claim as referenced herein are so flagrant they justify *de novo* review.

28. As a direct result of LINA's decision to deny Plaintiff's STD claim he has been injured and suffered damages in the form of lost short and long term disability benefits, in addition to other potential employee benefits he may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled in either claim.

29. As referenced herein, since exhausting short term disability benefits pursuant to the Plan may have been a pre-requisite for Plaintiff to be eligible for long term disability benefits, LINA's denial of his short term disability claim precluded his ability to file or be eligible for long term disability benefits. At present, but for LINA's erroneous denial of his short term disability claim he would now be eligible for and receiving long term disability benefits.

30. Plaintiff seeks a determination in this litigation that he meets the definition of disability and is entitled to benefits in both the short term disability Plan and the LINA long term disability Policy since the definitions of disability are essentially the same and the aforementioned evidence already submitted to LINA by Plaintiff proves he meets both the short and long term definitions of disability. Moreover, Plaintiff also seeks a determination that it is administratively futile for him to file a claim for long term disability benefits with LINA given the fact LINA is the decision maker and payor of benefits in the long term disability claim, the definitions of disability are essentially the same in both claims as is the evidence. Therefore, it is administratively futile for Plaintiff to file a long term disability claim as there is no reason to believe LINA would approve that claim given the fact it has already denied his short term claim on several occasions.

31. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

32. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate his for losses he incurred as a result of Defendants' unjustified denial of payment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order finding that Plaintiff meets any definition of disability set forth in both the short term disability Plan and the LINA long term disability Policy and the relief sought in Paragraph 30 herein. For an Order requiring Defendants to pay Plaintiff short and long term disability benefits and any other employee benefits he may be entitled to as a result of being found disabled pursuant to the aforementioned short term disability Plan and/or LINA long term disability policy, from the date he was first denied these benefits through the date of judgment and prejudgment interest thereon;

B. For an Order requiring Defendants to continue paying Plaintiff the aforementioned benefits until such time as he meets the conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

DATED this 26th day of March, 2012.

SCOTT E. DAVIS. P.C.

By:  */s/ Scott E. Davis*
Scott E. Davis
Attorney for Plaintiff

-10-